UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERANNYS YERALDIN LOPEZ ESPINOZA,<br><br>          Petitioner,<br><br>     v.<br><br>CHRISTOPHER CHESNUT, WARDEN OF CALIFORNI CITY DETENTION CENTER, *et al*.,<br><br>          Respondents. | Case No.   1:26-cv-03850 (EJD)<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. Nos. 1, 2 |

This habeas action concerns the re-detention of petitioner Gerannys Yeraldin Lopez Espinoza ("Petitioner"), a noncitizen who was detained and released on January 30, 2024, but recently re-detained. This matter is before the Court on Petitioner's petition for writ of habeas corpus and motion for a temporary restraining order. Dkt. Nos. 1, 2. For the reasons explained below, the petition for writ of habeas corpus is granted, and the motion for a temporary restraining order is resolved as moot.

## I.     BACKGROUND

Petitioner is an asylum-seeker from Venezuela who entered the United States in September 2023, fleeing political persecution. Dkt. ¶ 18. On January 30, 2024, she "applied for admission to the United States at the Nogales, Arizona DeConcini Port of Entry" and appeared for an appointment with U.S. Customs and Border Protection. Dkt. 6-2 at 3. At her appointment, she was charged with inadmissibility "pursuant to section 212(a)(7)(A)(i)(I) of the [Immigration and Nationality Act] and [was] process for Notice to Appear/Section 240 Hearings[.]" *Id*. She was then "paroled for two years." *Id*. Following her release, Petitioner was authorized to begin work,

Case No.: 1:26-cv-03850-EJD

1

provided for her family living in the United States, and sought relief in her removal proceedings by filing an asylum application. Dkt. 1 ¶¶ 22, 27. She was also convicted of one infraction-level offense for disorderly conduct under Utah Code § 76-9-102. *Id*. ¶ 20.

On March 26, 2026, Petitioner was arrested by Utah law enforcement based on an outstanding warrant for a domestic violence matter. *Id*. ¶ 23. Though the domestic violence matter resolved without charges or a conviction, law enforcement transferred Petitioner to the custody of the Department of Homeland Security ("DHS"). *Id*. Petitioner was transported to the California City Detention Center where she remains detained. *Id*.

On May 19, 2026, petitioner filed a petition for writ of habeas corpus, Dkt. 1, and a motion for temporary restraining order, Dkt. 2. Respondents filed an opposition to both the petition and motion for temporary restraining order on May 22, 2026, noting that they "do not oppose the Court resolving the merits of the petition without further briefing" and "do not request a hearing." Dkt. 6. Petitioner filed a reply on May 23, 2026. Dkt. 7.

## II.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525, 124 S.Ct. 2633 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that she is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    DISCUSSION

Petitioner argues that the Due Process Clause bars the government from re-detaining her

Case No.: 1:26-cv-03850-EJD

<div style="writing-mode: vertical">United States District Court
Eastern District of California</div>

without first providing a hearing where it must prove she is a flight risk or danger to the community. Dkt. 7 at 12–18. In response, Respondents argue that "Petitioner is an 'applicant for admission' who is subject to mandatory detention" under 8 U.S.C. § 1225(b) ("Section 1225"). Dkt. 6 at 2.

Courts throughout this circuit have found that noncitizens, like Petitioner, who are paroled into the United States have a due process right to challenge their re-detention without a bond hearing. *See, e.g.*, *Ramirez Tesara v. Wamsley*, 800 F.Supp.3d 1130 (W.D. Wash. 2025); *Francois v. Wamsley*, No. C25-2122-RSM-GJL, 2025 WL 3063251 (W.D. Wash. Nov. 3, 2025); *Castillo v. Wofford*, No. 1:25-CV-01586-JLT-HBK, 2025 WL 3466064, at *8 (E.D. Cal. Dec. 2, 2025) (finding *Barrera-Echavarria* inapposite to a noncitizen who had been detained at the border and paroled pending removal proceedings). The Court similarly finds that Petitioner has a due process right to challenge her re-detention pending her removal proceedings.

Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### A.    Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). As such, even when a statute allows the government to arrest and detain an individual, courts throughout the Ninth Circuit have found that non-citizens released on parole by immigration authorities obtain a protected liberty interest in their continued freedom from immigration detention. *See id.* (Due Process requires hearing before revocation of preparole); *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1029 (N.D. Cal. 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL

Case No.: 1:26-cv-03850-EJD

1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). This is because parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id*. Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

Petitioner's parole was similar. For over two years, it allowed her to establish ties in the community, work pursuant to a valid work authorization, and pursue relief in her removal proceedings. These actions were made possible by her freedom, which is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

Respondents argue that they nonetheless had discretion to re-detain Petitioner under Section 1225. Dkt. 6 at 2. This Court—as well as the majority throughout the United States—have already concluded that applying Section 1225 to non-citizens like Petitioner who are re-detained within the interior of the United States "(1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, 801 F.Supp.3d 1104, 1112 (E.D. Cal. Sept. 23, 2025) (collecting cases); *Lopez-Campos v. Raycraft*, No. 25-1965, 2026 WL 1283891, at *4–11 (6th Cir. May 11, 2026); *Barbosa da Cunha v. Freden*, No. 25-3141-PR, 2026 WL 1146044, at *4–9 (2d Cir. Apr. 28, 2026); *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, 2026 WL 1223250, at *21 (7th Cir. May 5, 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, No. 25-14065, 2026 WL 1243395, at *21 (11th Cir. May 6, 2026); *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1304 (W.D. Wash. Sept. 30, 2025); *Menjivar Sanchez v. Wofford,* No. 1:25-CV-01187-SKO (HC), 2025 WL 2959274, at *3–7 (E.D. Cal. Oct. 17, 2025) (collecting cases); *Shoimov v. Chestnut*, No. 1:25-CV-1603 CSK, 2026 WL 35624, at *4 (E.D.

Case No.: 1:26-cv-03850-EJD

United States District Court
Eastern District of California

Cal. Jan. 6, 2026); *Singh v. Bondi et al.*, No. 1:26-CV-0396 DC CSK P, 2026 WL 469169, at *3 (E.D. Cal. Feb. 19, 2026); *Sharan S. v. Chestnut*, No. 1:25-cv-01427-KESSKO (HC), 2025 WL 3167826, at *5 (E.D.Cal. Nov. 12, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *3 (N.D. Cal. Aug. 21, 2025).

While immigration officials may have had discretion over the initial decision to detain or release Petitioner, their decision to release her from custody created "an implicit promise" upon which she could rely: that her liberty "will be revoked only if [she] fails to live up to the … conditions [of release]." *Morrissey*, 408 U.S. at 482. As other courts have found in similar circumstances, "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). As such, the Court finds that Petitioner has a protected liberty interest in her release.

### B.    *Mathews* Factors

Respondents argue that the Court should not provide Petitioner with more process than that provided by statute, specifically Section 1225. Dkt. 6 at 2–3. However, "once it is determined that the Due Process Clause applies, 'the question remains what process is due,'" and "[t]he answer to that question is not to be found in the [governing] statute." *Cleveland Bd. of Educ.*, 470 U.S. at 541 (quoting *Morrissey*, 408 U.S. at 481). Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first factor, Petitioner has a significant private interest in remaining free from

Case No.: 1:26-cv-03850-EJD

United States District Court
Eastern District of California

detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner had been out of custody for over two years in reliance on the government's previous representations that she was being released pending her removal proceedings. Her detention denies her that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690. Even if Petitioner's arrest is considered a violation of her parole—an argument which Respondents did not make in their opposition—"a valid reason to detain petitioner does not eliminate [the government's] obligation to effectuate the detention in a manner that comports with due process." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). As there were no procedural safeguards to determine if Petitioner's re-detention was justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

Third, although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F.Supp.3d 1083, 1094–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 787 F.Supp.3d at 1094–95. "If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so[,]" but it must hold a hearing first. *Ortega*, 415 F. Supp. 3d at 970.

On balance, the *Mathews* factors show that Petitioner is entitled to a bond hearing. Given that "'[t]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* [s]he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ.*, 470 U.S. at 542 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)), courts

Case No.: 1:26-cv-03850-EJD

United States District Court
Eastern District of California

throughout this district have held that the appropriate process is a pre-deprivation hearing. *See, e.g.*, *R.A.N.O. v. Wofford*, No. 1:25-CV-01535-KES-EPG (HC), 2026 WL 40507, at *7 (E.D. Cal. Jan. 6, 2026); *M.F.U.G. v. Wofford*, No. 1:26-CV-00557-KES-SKO (HC), 2026 WL 209210, at *1 (E.D. Cal. Jan. 27, 2026); *Osoria v. Warden of the California City Det. Ctr.*, No. 1:26-CV-01528-KES-EPG-HC, 2026 WL 747297, at *3 (E.D. Cal. Mar. 17, 2026). As such, the Court concludes that a pre-deprivation hearing is necessary to satisfy due process.

## IV. CONCLUSION AND ORDER

The first amended petition for writ of habeas corpus, Doc. 14, is GRANTED. Respondents are ORDERED to release Petitioner immediately. Respondents are ENJOINED AND RESTRAINED from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

The Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

Dated: May 26, 2026

EDWARD J. DAVILA
United States District Judge

Case No.: 1:26-cv-03850-EJD

7